UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
HAMMOND DIVISION

| | |
|---|---|
| SANDY SEPULVEDA, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) Case No. 2:24-cv-257 |
| | ) |
| FRANCISCAN ALLIANCE, INC., | ) |
| FRANCISCAN PHYSICIAN NETWORK, | ) |
| SPECIALTY PHYSICIANS OF ILLINOIS, | ) |
| LLC, ROB HARNAGAE, MEGAN | ) |
| ZIMMERMAN, and TAMARA AWALD, | ) |
| | ) |
| Defendants. | ) |

**OPINION AND ORDER**

This matter is before the court on the Motion to Dismiss for Failure to State a Claim [DE 16] filed by the defendants, on September 18, 2024. For the following reasons, the motion is **GRANTED**.

*Background*

On July 25, 2024, the plaintiff, Sandy Sepulveda, filed this action against the defendants, Franciscan Alliance, Inc. ("Franciscan"), Franciscan Physician Network ("FPN"), Specialty Physicians of Illinois, LLC ("SPI"), Megan Zimmerman, Tamara Awald, and Rob Harnage, for alleged employment discrimination and wrongful termination. According to Plaintiff, the defendants violated her rights under the Family and Medical Leave Act, 29 U.S.C. §§ 2611(4)(A) to 2615 ("FMLA"); Americans with Disabilities Act of 1990, 42 U.S.C. §§ 12112 to 12117 ("ADA"); Title VII of the Civil Rights Act of 1964 ("Title VII"); and Illinois Whistleblower Act, 740 ILCS 174/20.2. Without more, Plaintiff also claims that Defendants retaliated against her. [DE 1].

Plaintiff worked with the defendants from 2021 until her termination on August 24, 2023. [DE 1]. In 2021, Plaintiff discovered that her supervisor, Rob Harnage, was having an affair with another employee, Nicole Pugh. [DE 1]. Plaintiff claims that knowledge of the affair made her uncomfortable because it violated her Catholic beliefs and created a hostile work environment. [DE 1]. Plaintiff also claims that, during an audit, she discovered that physicians were prescribing contraceptives, which also violated her Catholic beliefs. Plaintiff spoke with Harnage about this matter, and he informed her that physicians at Franciscan were permitted to prescribe contraceptives, and that she need not note her finding in the audit. [DE 1].

After discovering Harnage's affair with Pugh, who Harnage did not supervise, Plaintiff claims that a series of retaliatory actions occurred. Plaintiff alleges that after a 2022 performance review with Harnage, which Harnage conducted from a cell phone call in his car, Plaintiff heard Harnage tell Pugh that he never was going to promote Plaintiff. [DE 1]. Plaintiff reported Harnage and Pugh's relationship to Human Resources, merely reporting only the relationship's existence, not its impact. [DE 1]. Following the performance review, Plaintiff also notes that Harnage failed to appear for a mediation and re-delegated a task to her counterpart. [DE 1]. Without articulating specifics, Plaintiff claims that she dealt with retaliatory criticism for reporting discrimination [DE 1], but reporting an affair is not reporting discrimination under applicable federal law.

On September 15, 2022, Harnage announced that he had been terminated, and he was replaced by Megan Zimmerman. [DE 1]. On October 5, 2022, Zimmerman asked to meet with Plaintiff and disciplined Plaintiff for not following orders. *Id.* The next day, on October 6, 2022, Plaintiff told Human Resources that Harnage was retaliating against her and taking away her job responsibilities. *Id.* However, this was approximately a month after Harnage had been

2

terminated. [DE 1]. In November 2022, Plaintiff and Zimmerman exchanged many emails which ultimately led to Plaintiff passing out and requiring medical attention. *Id.* Zimmerman requested an in-person meeting with Plaintiff after the exchange of these emails. The next day, Plaintiff filed a formal incident report claiming harassment and requested a transfer to another supervisor. *Id.* Plaintiff had a panic attack on November 10, 2022, and subsequently went on FMLA leave from November 2022 to February 3, 2023. [DE 1]. Three days after Plaintiff returned from FMLA leave, Zimmerman issued Plaintiff a "write up" regarding incident reports that were not closed during her FMLA leave. [DE 1]. Thereafter, Plaintiff claims she exhibited anxiety and distress just talking to Zimmerman or even exchanging emails. [DE 1].

In late February 2023, Plaintiff and Zimmerman were on a TEAMS meeting and Zimmerman "gave a horrible depiction of [Plaintiff]." Later that day, Plaintiff filed a compliance complaint with Franciscan's general counsel and head of ethics. *Id.* Plaintiff also learned that Zimmerman and Pugh were friends. *Id.* In March 2023, Plaintiff met with Franciscan legal counsel to discuss her concerns of retaliation for reporting the affair and allowing the prescription of contraceptives. [DE 1]. A month later, Zimmerman wrote up Plaintiff again. Plaintiff wrote to Human Resources, a nun, and a priest affiliated with Franciscan and requested their help in transferring to a new supervisor. *Id.* Plaintiff further claims that she and another employee were confused about how certain incident reports were handled, but that only she, and not the other employee, was disciplined for failure to process the report correctly. [DE 1]. Plaintiff was terminated on August 24, 2023. [DE 1].

Plaintiff subsequently initiated a charge against "Franciscan Alliance" with the United States Equal Employment Opportunity Commission ("EEOC") on February 20, 2024, causing a Notice of Charge of Discrimination to be sent to Defendants. [DE 16-3]. Plaintiff failed to

perfect the charge at that time. *Id.* On April 22, 2024, Plaintiff filed an EEOC Form 5 Charge of Discrimination. [DE 16-4]. The next day, Plaintiff filed an Amended Charge of Discrimination. [DE 16-5]. The EEOC dismissed the Charge without further investigation on April 29, 2024. [DE 16-6]. On July 25, 2024, Plaintiff filed this complaint alleging ten counts: (1) Count 1: FMLA Interference Against Defendants Franciscan, FPN, SPI, and Zimmerman; (2) Count II: Retaliation for exercising rights under FMLA against Franciscan, FPN, SPI, and Zimmerman; (3) Count III: Intentional Infliction of emotional distress against all Defendants; (4) Count IV: Title VII Religious Discrimination against all Defendants; (5) Count V: Title VII Retaliation for reporting alleged religious discrimination against all Defendants; (6) Count VI: Violation of the Illinois Whistleblower Act against all Defendants; (7) Count VII: Age discrimination in violation of the ADEA against all Defendants; (8) Count VIII: Title VII Sexual harassment/Hostile Work Environment against all Defendants; (9) Count IX: Title VII Retaliation for reporting alleged sexual harassment against all Defendants; and (10) Count X: Retaliation for reporting ethics violations and refusing to fraudulently complete documents in violation of public policy against all Defendants. [DE 1].

Defendants Tamara Awald, Franciscan Alliance, Inc., Franciscan Physician Network, Specialty Physicians of Illinois, LLC, and Megan Zimmerman filed this Motion to Dismiss [DE 16] on September 18, 2024. Defendant Rob Harnage filed a Notice of Joinder. [DE 17]. Plaintiff filed her Response [DE 21] on October 18, 2024. Defendants filed their Reply [DE 22] on November 8, 2024. Thus, this motion is ripe for review.

The parties consented to have this case assigned to a United States Magistrate Judge to conduct all further proceedings and to order the entry of a final judgment. [DE 19]. As a result, this court has jurisdiction to decide this case pursuant to 28 U.S.C. § 636(c).

*Discussion*

Federal Rule of Civil Procedure 12(b)(6) allows for a complaint to be dismissed if it fails to "state a claim upon which relief can be granted." Allegations other than those of fraud and mistake are governed by the pleading standard in Rule 8(a)(2) which requires a "short and plain statement" to show that a pleader is entitled to relief. *See Cincinnati Life Ins. Co. v. Beyrer*, 722 F.3d 939, 946 (7th Cir. 2013). The Supreme Court clarified its interpretation of the Rule 8(a)(2) pleading standard in a decision issued in May 2009. While Rule 8(a)(2) does not require the pleading of detailed allegations, it still demands something more "than an un-adorned, the-defendant-unlawfully-harmed-me accusation." *Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 S. Ct. 1937, 1949, 173 L.Ed.2d 868 (2009).

In order to survive a Rule 12(b)(6) motion, a complaint "must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Iqbal*, 556 U.S. at 678 (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570, 127 S. Ct. 1955, 167 L.Ed.2d 929 (2007)); *Ollison v. Gossett*, 2025 WL 1318362 at *4 (7th Cir. May 7, 2025); *Cincinnati Life Ins. Co.*, 722 F.3d at 946 ("The primary purpose of [Fed. R. Civ. P. 8 and 10(b)] is to give defendants fair notice of the claims against them and the grounds supporting the claims")(quoting *Stanard v. Nygren*, 658 F.3d 792, 797 (7th Cir. 2011)); *Peele v. Clifford Burch*, 722 F.3d 956, 959 (7th Cir. 2013) (explaining that one sentence of facts combined with boilerplate language did not satisfy the requirements of Rule 8); *Joren v. Napolitano*, 633 F.3d. 1144, 1146 (7th Cir. 2011); *U.S. ex rel. Berkowitz v. Automation Aids, Inc.*, 896 F.3d 834, 839 (7th Cir. 2018). This pleading standard applies to all civil matters. *Iqbal*, 556 U.S. at 684.

The decision in *Iqbal* discussed two principles that underscored the Rule 8(a)(2) pleading standard announced by *Twombly*. See *Twombly,* 550 U.S. at 555 (discussing Rule 8(a)(2)'s requirement that factual allegations in a complaint must "raise a right to relief above the speculative level"). First, a court must accept as true only *factual* allegations pled in a complaint; "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Automation Aids, Inc.*, 896 F.3d at 839 (internal citations omitted). Next, only complaints that state "plausible" claims for relief will survive a motion to dismiss: if the pleaded facts do not permit the inference of more than a "mere possibility of misconduct," then the complaint has not met the pleading standard in Rule 8(a)(2). *Iqbal*, 556 U.S. at 678–79; *see also Brown v. JP Morgan Chase Bank*, No. 08-1890, 2009 WL 1761101, at *1 (7th Cir. June 23, 2009) (defining "facially plausible" claim as a set of facts that allows for a reasonable inference of liability).

The Supreme Court has suggested a two-step process for a court to follow when considering a motion to dismiss. First, any "well-pleaded factual allegations" should be assumed to be true by the court. Next, these allegations can be reviewed to determine whether they "plausibly" give rise to a claim that would entitle the complainant to relief. *Iqbal*, 129 S. Ct. at 1949-50; *Bonte v. U.S. Bank, N.A.*, 624 F.3d 461, 465 (7th Cir. 2010). Reasonable inferences from well-pled facts must be construed in favor of the plaintiff. *Murphy v. Walker*, 51 F.3d 714, 717 (7th Cir. 1995); *Maxie v. Wal-Mart Store*, No. 3:09-cv-260, 2009 WL 1766686, at *2 (N.D. Ind. June 19, 2009); *Banks v. Montgomery*, No. 3:09-cv-23, 2009 WL 1657465, at *1 (N.D. Ind. June 11, 2009).

As a preliminary matter, Plaintiff sued "FPN," which is not an actual entity but an assumed name of Franciscan. [DE 16-7; DE 16-8; DE 16-9]. Because Plaintiff already has sued

6

Franciscan, all claims against FPN are duplicative. Plaintiff does not refute that any claim against FPN is futile. Therefore, the court **DISMISSES** FPN as a defendant in this case.

Next, Plaintiff failed to exhaust her administrative remedies, as required by Title VII. *Williams v. Potter*, 2008 WL 4449549 (N.D. Ind. Sept. 25, 2008). "Title VII does not authorize the filing of suit until the plaintiff has exhausted his administrative remedies." 42 U.S.C. § 2000e-16(c). Exhausting administrative remedies includes waiting to sue until after receiving a right-to-sue letter from the EEOC, which confirms that the EEOC is not going to provide the plaintiff with any relief. *Hill v. Potter*, 352 F.3d 1142, 1145 (7th Cir. 2003). "If plaintiff could sue before then, the time of the courts and of lawyers would be wasted with cases that ended up being resolved or abandoned at the administrative level." *Hill*, 352 F.3d at 1145. Plaintiff's Complaint does not mention anything about Plaintiff's case at the EEOC and, subsequently, does not affirmatively assert exhaustion of her administrative remedies, including receipt of a right-to-sue letter. [*See* DE-1]. Consequently, all claims under Title VII and the ADEA are **DISMSSED** as a matter of law. It is unnecessary for the court to discuss the remaining challenges to Counts IV, V, VII, VIII, and IX raised by Franciscan.

**A. Count I**

Plaintiff asserts that Franciscan, SPI, and Zimmerman interfered with her rights under the FMLA. The FMLA prohibits an employer from interfering, restraining, or denying the exercise of or the attempt to exercise any right provided under the FMLA. 29 U.S.C. § 2615(a)(1). The plaintiff has the burden of proving an FMLA interference claim. *Darst v. Interstate Brands Corp.*, 512 F.3d 903, 908 (7th Cir. 2008). To demonstrate an FMLA interference violation, a plaintiff must show: she was eligible for FMLA protections; the employer was covered by the FMLA; she was entitled to leave under the FMLA; she provided sufficient notice of her intent to

take leave; and the employer interfered with, restrained, or denied FMLA benefits that she was entitled. *Ziccarelli v. Dart*, 35 F.4th 1079, 1089 (7th Cir. 2022). The parties do not dispute that Plaintiff was eligible for FMLA benefits, the named defendants were covered by the FMLA, Plaintiff was entitled to FMLA leave, or proper notice was provided. The issue here is whether interference can occur if Plaintiff was able to enjoy the FMLA benefit requested.

Plaintiff was able to take FMLA leave. [DE 1]. Plaintiff alleges interference because she was "written up" upon her return from leave for reports that were not finalized during her leave. The named defendants state that Plaintiff's write-up was for performance behavior that occurred before Plaintiff took her leave. [DE 16]. This court will consider the facts pled in Plaintiff's Complaint as true.

Interference under the FMLA is not limited to the denial of leave. *Preddie v. Bartholomew Consol. Schl. Corp.*, 799 F.3d 806, 818 (7th Cir. 2015) ("interference" can include discouraging the use of FMLA leave); *Dart*, 35 F.4th at 1085. Here, Plaintiff has pled that she was penalized for work that was not completed while she was on her FMLA leave. The FMLA can require an employer to adjust its performance standards to avoid penalizing an employee for being absent during FMLA-protected leave. *Pagel v. TIN Inc.*, 695 F.3d 622, 629 (7th Cir. 2012). However, the named defendants did not discourage, interfere, deny, or restrain Plaintiff's FMLA leave. *Dart*, 35 F.4th at 1089. Unlike in other cases before this court and the Seventh Circuit demonstrating an FMLA interference claim, Plaintiff claims that the write-up occurred *after* she took leave, not prior, and not in a way to discourage her from taking leave. That makes Count I more akin to a retaliation claim because, chronologically, the write-up occurred after Plaintiff returned to work. *See Preddie*, 799 F.3d at 818; *Lutes v. United Trailers, Inc.*, 950 F.3d 359, 368 (7th Cir. 2020).

Even if the chronology of the write-up did not matter, Plaintiff has not demonstrated that she was prejudiced by the write up. 29 U.S.C. § 2617; *Ridings v. Riverside Med. Ctr.*, 537 F.3d 755, 764 (7th Cir. 2008); *Ragsdale v. Wolverine World Wide, Inc.*, 535 U.S. 81, 89 (2002). The named defendants did not penalize Plaintiff for taking leave as they did not demote or fire her upon her return. *Breneisen v. Motorola, Inc.*, 512 F.3d 972, 981-82 (7th Cir. 2008). The motion to dismiss Count I is **GRANTED**. Count I is **DISMISSED**.

**B. Count II**

Plaintiff asserts Franciscan, SPI, and Zimmerman retaliated against her for taking FMLA leave by giving her a write-up upon her return from leave. For this claim, Plaintiff's reasoning is duplicative of her basis for Count I. Plaintiff alleges the named defendants retaliated against her by writing her up after she returned from leave for failure to complete reports while on leave. [DE 1]. The named defendants maintain that the write-up was related to an incident before Plaintiff took leave. [DE 16].

To prevail on a claim of retaliation under the FMLA, a plaintiff must show: her employer took a materially adverse action against her on account of a protected activity or that after taking FMLA leave, she was treated less favorably than other similarly situated employees who did not take FMLA leave. *Burnett v. LFW, Inc.*, 471 F.3d 471, 481 (7th Cir. 2006). Here, Plaintiff claims that she received a write-up in retaliation for taking FMLA leave, asserting the write-up was for an incident that happened *during* Plaintiff's leave. [DE 1]. The named defendants claim that the write-up was for behavior that occurred prior to Plaintiff's leave, thereby making it impossible that the write-up itself was retaliatory. [DE 16]. Poor performance reviews are not materially adverse actions. *Langenbach v. Wal-Mart Stores, Inc.*, 761 F.3d 792, 799 (7th Cir. 2014). Even a poor performance review that results in an improvement plan is not a materially adverse action.

*Cole v. Illinois*, 562 F.3d 812, 816-18 (7th Cir. 2009) ("performance improvement plan was not a materially adverse action because Cole suffered no reduction in responsibility, pay, hours, or any other benefit, and it did not impose a material change in her employment duties."). Count II is **DISMISSED**.

### C. Count III

Plaintiff asserts a claim against all of the defendants for intentional infliction of emotional distress. [DE 1]. Specifically, Plaintiff alleges that Defendants knew or should have known that she was "particularly susceptible to emotional distress, since she had previously fainted at work and had been transported by ambulance due to stress, she had been having panic attacks, and she had expressed the desire to be transferred due to the immense stress." [DE 1].

To establish a claim for intentional infliction of emotional distress ("IIED"), a plaintiff must show that the defendant engaged in extreme and outrageous conduct that intentionally or recklessly caused severe emotional damage to another. *Miller v. Cent. Ind. Cmty. Found., Inc.*, 11 N.E.3d 944, 959 (Ind. Ct. App. 2014). Plaintiff claims that Defendants' actions were "intentional recklessly negligent." [DE 1]. Merely using the words "extreme and outrageous behavior," without specificity, does not meet the requirements to prove an IIED claim. *McCollough v. Noblesville Sch.*, 63 N.E.3d 334, 342 (Ind. Ct. App. 2016). In *McCollough*, the Indiana Court of Appeals reiterated that a defendant's intent to harm the plaintiff emotionally must be demonstrated. *McCollough*, 63 N.E.3d at 342. In her Complaint under Count III, Plaintiff merely alleges that Defendants should have known that Plaintiff was susceptible to emotional stress. [DE 1]. In Plaintiff's Response [DE 21], Plaintiff points to all the additional facts pled in the Complaint that Plaintiff was "a devout Catholic with very strong religious beliefs against affairs and against contraception" but worked for a Catholic organization that

disregarded those beliefs. [DE 1]. "Extreme and outrageous" conduct is conduct that would objectively offend a civilized community. In *Jaffri v. JPMorgan Chase Bank*, the Indiana Court of Appeals held that "whether 'extreme and outrageous conduct' has occurred depends, in part, on prevailing cultural norms." *Jaffri v. JPMorgan Chase Bank*, N.A., 26 N.E.3d 635, 640 (Ind. Ct. App. 2015) (citing *Bradley v. Hall*, 720 N.E.2d 747, 752–53 (Ind. Ct. App. 1999) (quoting Restatement (Second) of Torts § 46, cmt).

Plaintiff fails to provide anything other than conclusory statements about Catholic teachings. Plaintiff's Complaint purports that Defendants' practice and lack of termination violated Catholic teaching in such a way that was capable of inflicting severe emotional damage. This statement is conclusory because Plaintiff does not substantiate the standard of Catholic teachings violated. *Twombly*, 550 U.S. at 557. This is a conclusion that Defendants' practice is against Catholic doctrine and such violation has the capability of inflicting emotional distress. It does not give the court the ability to determine the plausibility that "anyone who is Catholic" would find Defendants' behavior "outrageous." [DE 21]. Plaintiff does not even ask this court to take judicial notice of Catholic teachings. In short, Plaintiff is alleging that she suffered emotional distress because others did not adhere to her own high moral standards. Simply stating the proposition shows why it is beyond the scope of judicial review.

Further, this court lacks jurisdiction to address this issue under the Free Exercise Clause of the First Amendment. U.S. Const. amend. I. *See Our Lady of Guadalupe Sch. v. Morrissey-Berru*, 591 U.S. 732, 756-57 (2020) (citing *Hosanna-Tabor Evangelical Lutheran Church and Sch. v. E.E.O.C.*, 565 U.S. 171, 191-95 (2012). Even if this court did have subject matter jurisdiction over Count III, Plaintiff has pled insufficient facts to support a conclusion that would allow Count III to survive. Count III is **DISMISSED**.

**D. Count VI**

Plaintiff asserts that all of the defendants violated the Illinois Whistleblower Act, 740 ILCS § § 174/20 and 20.1, by allegedly asking Plaintiff to violate company policy and "Catholic ethical rules promulgated by the United States Conference of Catholic Bishops." [DE 1]. Plaintiff alleges that she was instructed to alter records or omit information regarding contraceptive prescriptions. Plaintiff maintains that reporting such practices was Franciscan's policy, so she was being asked to violate that policy. *Id.* Plaintiff also states that prescribing contraceptives violates her own personal religious beliefs, so she refused to alter reports or omit information. *Id.* Plaintiff asserts she was harassed and subsequently terminated following her refusal and her report of her colleagues' relationship. *Id.*

Under the Illinois Whistleblower Act, an employer is prohibited from retaliating against an employee for refusal to participate in an activity that would result in a "violation of a State or federal law, rule, or regulation, including, but not limited to, violations of the Freedom of Information Act." 740 ILCS § 174/20. Here, Plaintiff does not allege that Defendants violated a State or federal law, rule, or regulation. [DE 1]. Rather, Plaintiff alleges that Defendants violated Catholic teaching and Franciscan's own policy. Catholic ethics rules are not covered by the Illinois Whistleblower Act. Count VI is **DISMISSED**.

**E. Count X**

Plaintiff asserts that all of the defendants retaliated against her for reporting ethics violations and violations of Catholic policies and for refusing to modify reports detailing the prescription of birth control.

Indiana law does not provide for a blanket "retaliation" claim. Count X is separate from Count II, which is a claim for retaliation under the FMLA. Here, Plaintiff does not point to a

12

statute or law or even claim retaliatory discharge but merely claims she was retaliated against. [DE 1]. Plaintiff did not refute Defendants' arguments regarding Count X in its Response. Count X is **DISMISSED**.

### *Conclusion*

Based on the foregoing reasons, Defendants' Motion to Dismiss [DE 16] is **GRANTED**. Count I, Count II, Count III, Count IV, Count V, Count VI, Count VII, Count VIII, Count IX, and Count X are **DISMISSED WITH PREJUDICE**. Defendant FPN is **DISMISSED**. This case is **DISMISSED**.

ENTERED this 19th day of May, 2025.

/s/ Andrew P. Rodovich
United States Magistrate Judge